## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOHN DRISH,<br>on behalf of Plaintiff<br>and the class members described herein,<br><br>Plaintiff,<br><br>v.<br><br>CONSTANTINE RADIOTIS;<br>NCR FINANCIAL SERVICES, INC.;<br>FINSANA, LLC;<br>WATERS LAW OFFICE, PLLC, doing business<br>as WLO Payments;<br>and JOHN DOES 1-20,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT – CLASS ACTION

1. Plaintiff, John Drish, brings this action against (1) Constantine Radiotis; (2) NCR Financial Services, Inc.; (3) Finsana, LLC; (4) Waters Law Office, PLLC, doing business as WLO Payments; and (5) John Does 1-20 (collectively, "Defendants"), to secure redress for usurious and illegal loans (such as <u>Exhibit A</u>) made to Illinois residents.

2. Plaintiff seeks damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count I), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.* and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count II – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961 et seq. (Count III), and damages for unjust enrichment (Count IV).

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction under 28 U.S.C. §1331, 28 U.S.C. §1332(d), 18 U.S.C. §1964, 28 U.S.C. §1337, and 28 U.S.C. §1367.

4. The amount in controversy on a classwide basis exceeds $5 million, exclusive of

interest and costs. There are believed to be over 100 members of the class, all of whom are of diverse citizenship to Defendants.

5. This Court has personal jurisdiction over Defendants because they:

a. Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello*, 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b. Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

6. Venue is proper because Plaintiff resides in and obtained a loan in this District.

7. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008) (summarizing statutes allowing 5% to 8% interest).

## PARTIES AND OTHERS

8. Plaintiff is a citizen of Illinois and a resident of Chicago, Illinois.

9. Defendant Constantine Radiotis, also known as Constantinos Radiotis, is the president, secretary, and treasurer of NCR Financial Services, Inc., as well as its Director of Operations. He may be found at 4480 Chemin de la Côte-de-Liesse Suite 355, Mount Royal, Quebec, H4N 2R1, Canada.

10. Defendant NCR Financial Services, Inc. is a corporation organized under the law of Delaware with a principal place of business of 4480 ch. de la Cote-de-Liesse, Suite 355, Mont-Royal, Quebec, H4N 2R1, Canada. Its registered agent and office is Corpomax, Inc., 2915 Ogletown Road, Newark, Delaware 19713.

11. Defendant Finsana, LLC is a limited liability company organized under Delaware law with a principal place of business of 4480 ch. de la Cote-de-Liesse, Suite 355, Mont-Royal, Quebec, H4N 2R1, Canada. Its registered agent and office is Corpomax, Inc., 2915 Ogletown Road, Newark, Delaware 19713.

12. Finsana, LLC describes itself as an "emerging global lender that specializes in catering to underserved and underbanked consumers since 2006."

13. Defendant Radiotis is the founder and chairman of Finsana, LLC.

14. Defendants Radiotis, NCR Financial Services, Inc., and Finsana, LLC devised a scheme to make loans to Illinois residents at triple-digit rates, described below.

15. Radiotis has significant experience in online payday lending. He operates numerous lenders purportedly affiliated with American Indian tribes, several operating with legitimate state licenses from Utah or Missouri, and some outside of the United States.

16. On information and belief, all of these lenders use the same automated phone system with the same computer-generated voice and containing the exact same error: "Thank you for calling (lender name). To ensure proper experience (SIC) all calls will be recorded for quality and compliance purposes."

17. On information and belief, all of these lenders use the same ACH Processor, WLO Payments, which disbursed the loans and received payments on the loans.

18. Defendant Waters Law Office, PLLC, doing business as WLO Payments, processes ACH transactions for the lending operations.

19. WLO Payments is a Montana professional limited liability company with a principal business address of 11 W. Main St., Suite 217, Belgrade, MT 59714.

20. WLO Payments's registered agent is Dustin Gahagan, 11 W. Main St., Suite 217, Belgrade, MT 59714

21. Defendants John Does 1-20 are other natural or artificial persons who participated in the Internet lending scheme complained of herein.

## **LENDING SCHEME**

22. Defendants made loans to residents of Illinois via the Internet. Funds were disbursed by means of ACH transfers to the borrowers' respective bank accounts in Illinois. Repayment was made via ACH transfers from the borrowers' respective bank accounts in Illinois.

23. The interest rates on the loans were many times the 36% maximum permitted in Illinois.

24. To cover up and conceal the illegality of the lending scheme, Defendants Radiotis, NCR Financial Services, Inc., and Finsana, LLC:

    a. Contracted with several individuals residing in Kahnawake, Quebec, to register assumed names under which loans were made. The individuals included Kirby DeLisle, Dave Barnard, and Ashley Ann Airey. The assumed names included Strategic Solutions Services, Arrow Mountain Funding, Arrow Mountain Finance, Express Funding, Guide Funding, Academy Funding, Turn Funding, Mask Funding, Coral Lending, Ahead Lending, Shore Lending, Lions Lending, Park Lane Lending, Field Assets Servicing Team (FAST), Money Credit Line, Guaranteed Cash Now, EZ Credit Line, Line of Credit Now, Oasis 1 Marketing, Swift Arrow Funding, Swift Deer Lending, Arrow Valley Loans, Rapid Arrow Loans, Green Fund Group, Green Funds Group,

Green Funds Express, Express Green Funds; Tomakowa, Pro Trust Group, River Funds, Midday Green, Eagle Wing Credit, Trois-Rivieres Solutions, Fast Green Direct, and Porch Light. (Exhibits B-D)

        b.        Created a "First Nations Lenders Authority" ("FNLA") also located in Kahnawake, Quebec, and which purported to be a regulatory agency operated by the Mohawk Native American Tribe for the purpose of regulating lending activity. (Exhibit E)

        c.        Created numerous websites through which loans were made ("FNLA websites"), including:

        i.        www.greenfundsexpress.com.

        ii.        www.arrowvalleyloans.com.

        iii.        www.greenfundsgo.com.

        iv.        www.arrowmountainfunding.com.

        v.        www.swiftdeerlending.com.

        vi.        www.rapidarrowloans.com.

        vii.        www.middaygreen.com.

        viii.        www.fastgreendirect.com.

        ix.        www.riverfundsgroup.com.

        x.        www.eaglewingfunds.com.

25.        The FNLA websites, despite supposedly being operated by different persons, are copies of one another. While minor details are changed, such as the font and text color, as well as the utilization of different stock photos, the text of the websites are almost verbatim duplicates of one another.

26.        Each of the FNLA websites contains the phrase "[h]ow much do you want to borrow?," followed by a slider that lets the user select an amount, with the slider set to $500 by default.

27.        The FNLA websites contain a series of testimonials, with a circular picture of the

consumer supposedly giving the testimonial.

28. The similarities between the websites, including shared call centers, ACH processor, and content, make clear that Radiotis, NCR Financial Services, Inc., and Finsana, LLC operate each online lender.

29. The loan documents recited that each lender was a "sole Mohawk proprietorship and operates within the Mohawk Community of Kahnawake, which is a federally recognized First Nations entity and enjoys governmental sovereign immunity," under the auspices of the FNLA.

30. This is not true.

31. The Mohawk Council of Kahnawake never authorized the lending activities in question. (Exhibit F)

32. Kirby DeLisle, Dave Barnard, and Ashley Ann Airey are either Native Americans (referred to as First Nations in Canada) or live on or near reservations. They were used to provide purported Native American cover for the lending operation, which was in fact operated by NCR Financial Services, Inc. and Finsana, LLC at the direction of Radiotis, with the assistance of WLO Payments.

33. FNLA was created in order to further the Native American cover, by purporting to be a regulatory authority regulating the making of loans from Native American reservations in Quebec. In fact, it had no authority to do so. (Exhibit F)

34. The FNLA allowed anyone to apply for certification, charging US (not Canadian) $20,000 per year for a lender to become a "General Member," US$7,500 per year to become an "Affiliate Member" (e.g., companies which "assist" licensed lenders), and US$5,000 for "approved vendors."

35. The FNLA was nothing more than a front created by NCR Financial Services, Inc., Finsana, LLC, and their owners and investors, to convince the public that the FNLA is a "real" governing body and, somehow, has authority to regulate lending and interest rates between lenders in Mohawk territory and consumers in the United States.

36. Prior to about April 2025, the FNLA Websites purportedly operated as "subsidiary agencies" of the FNLA.

37. The FNLA in turn claimed to operate pursuant to a Charter of The First Nation Lenders' Authority (the "Charter") granted by the Mohawks of Kahnawake, which Charter supposedly granted the authority to regulate "short-term lending service businesses within First Nations Territories."

38. The FNLA then granted licenses to each of the FNLA Websites which licenses were available via a link on each website so that any consumer accessing the website would believe the lender to be legitimately licensed by the Mohawks of Kahnawake.

39. However, no such charter was ever recognized by the Council, or any other legitimate governing authority. (Exhibit F)

40. Defendants' loan agreements contain a choice-of-law provision indicating the laws of the Mohawk govern. There is no such law. (Exhibit F)

41. Under Canadian federal law, a loan with an interest rate greater than 60% per annum (prior to January 1, 2025) or 35% (as of January 1, 2025) is a criminal offense, with no exception for loans made by persons claiming affiliation with a First Nation. (Section 347 of the Criminal Code of Canada)

42. The IP address for the server hosting GreenFundsExpress.com is 169.55.151.1, which corresponds to a physical location in the United States inside a data center operated by SoftLayer Technologies, Inc.

43. On information and belief, every Radiotis-related lender uses the same ACH processor, WLO Payments.

44. On information and belief, WLO Payments charges significantly more for processing ACH transactions than banks and other processors.

45. WLO Payments does this because it is aware that the business they are involved in would otherwise not be granted access to the ACH network.

46. WLO Payments's participation in the enterprise is thus willful, and essential to the lending enterprise's overall ability to operate.

## PLAINTIFF'S TRANSACTIONS

47. On or about April 8, 2024, Plaintiff took out a loan from "Green Funds Go d/b/a GFG" (nominally Kirby DeLisle). Plaintiff has been unable to locate the loan documents but Exhibit A illustrates the form of loan agreement used. The loan had an amount financed of $800 and a disclosed annual percentage rate of more than 36%.

48. On April 2, 2025, Plaintiff obtained a loan for $1,500 from "Green Funds Go d/b/a GFG" (nominally Kirby DeLisle) at a disclosed annual percentage rate of 504.51%. (Exhibit A)

49. The loans were made for personal purposes and not for business purposes.

50. The proceeds were transferred to Plaintiff's bank account in Illinois via ACH. On information and belief, WLO Payments was responsible for making the transfers.

51. Repayments were to be made from Plaintiff's bank account in Illinois via ACH. On information and belief, WLO Payments was responsible for making the transfers.

52. Plaintiff made payments on the loans, including interest.

53. Loans to Illinois residents made in the same manner as the loans to Plaintiff are governed by the laws of the State of Illinois.

54. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

55. The excessive interest charges imposed by Defendants were intentional.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

56. Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it

unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

57. Under 815 ILCS 123/15-10-5(b), "[a]ny violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

58. Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

59. Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

60. Loans made by an unlicensed lender to an Illinois resident at an interest rate exceeding 9% violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

61. Illinois' criminal usury statute provides that the making of a loan by an unlicensed person at more than 20% interest is a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*).

It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

62. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

63. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed, out-of-state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *See, e.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569); *In the Matter of Money Mutual, LLC*, No. 12 CC 408; *In the Matter of Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

64. The excessive interest charges imposed by Defendants were willful.

## COUNT I – ILLINOIS INTEREST ACT

65. Plaintiff incorporates paragraphs 1-64.

66. This claim is against all Defendants.

67. Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

68. Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

69. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and

(b)(3).

70. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made via any FNLA Website (c) at more than 9% interest (d) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

71. Plaintiff may alter the class definition to conform to developments in the case and discovery.

72. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

73. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

74. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

75. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

76. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Damages as provided in 815 ILCS 205/6;

    ii. Attorney's fees, litigation expenses and costs of suit; and

    iii. Such other and further relief as the Court deems proper.

### COUNT II – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

77. Plaintiff incorporates paragraphs 1-64.

78. This claim is against all Defendants.

79. Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

80. Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

### CLASS ALLEGATIONS

81. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

82. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made via any FNLA website (c) at more than 36% interest (d) on or after March 23, 2021.

83. Plaintiff may alter the class definition to conform to developments in the case and discovery.

84. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

85. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

86. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

87. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

88. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Compensatory damages;

    ii. Punitive damages;

    iii. Attorney's fees, litigation expenses and costs of suit; and

    iv. Such other and further relief as the Court deems proper.

## COUNT III – RICO

89. Plaintiff incorporates paragraphs 1-64.

90. This claim is against Radiotis, NCR Financial Services, Inc., Finsana, LLC, WLO, and John Does 1-20, who are the RICO "persons."

91. All loans made via the FNLA Websites to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

92. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

93. DeLisle, Airey and Bernard, and the websites they nominally operate, are each an enterprise affecting interstate commerce, in that they purport to be located in Canada and make loans to Illinois and other U.S. residents via the Internet.

94. Defendants Radiotis, NCR Financial Services, Inc., Finsana, LLC, WLO Payments, and John Does 1- 20, are associated with these enterprises.

95. Defendants Radiotis, NCR Financial Services, Inc., Finsana, LLC, WLO Payments, and John Does 1-20, conducted or participated in the conduct of the affairs of these enterprises through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C.

§1962(c).

96. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

97. Plaintiff brings this claim on behalf of a class.

98. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made via any FNLA website at more than 18% interest (all such loans qualify) (c) which loan was made on or after a date four years prior to the filing of suit.

99. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

100. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a. Whether the loans at issue are "unlawful debts" as defined in RICO.

      b. Whether DeLisle, Airey and Bernard are each an "enterprise."

      c. Whether Defendants Radiotis, NCR Financial Services, Inc., Finsana, LLC, WLO, and John Does 1-20 are associated with the enterprises.

      d. Whether Defendants Radiotis, NCR Financial Services, Inc., Finsana, LLC, WLO, and John Does 1-20 conducted or participated in the affairs of these enterprises through a pattern of making and collecting unlawful loans.

101. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

102. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

103. A class action is superior for the fair and efficient adjudication of this matter, in that:

      a. Individual actions are not economically feasible.

        b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants Radiotis, NCR Financial Services, Inc., Finsana, LLC, WLO, and John Does 1-20 for:

        i.      Treble damages;

        ii.      Attorney's fees, litigation expenses and costs of suit; and

        iii.      Such other or further relief as the Court deems proper.

## COUNT IV – UNJUST ENRICHMENT

104. Plaintiff incorporates paragraphs 1-64.

105. This claim is against all Defendants.

106. Defendants obtained money from Plaintiff and the class members through unjust means, and should in equity be required to disgorge such money.

## CLASS ALLEGATIONS

107. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

108. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made via any FNLA Website (c) at more than 36% interest (d) on or after March 23, 2021.

109. Plaintiff may alter the class definition to conform to developments in the case and discovery.

110. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

111. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

112. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

113. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

114. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

   i. Appropriate damages;

   ii. Costs of suit; and

   iii. Such other and further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Heather Kolbus
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
Dedelman@edcombs.com
Jclark@edcombs.com
Hkolbus@edcombs.com
ahuzyk@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

>                       */s/ Daniel A. Edelman*
>                       Daniel A. Edelman

**EXHIBITS**

| | |
|---|---|
| A | Plaintiff's loan agreement |
| B | Canadian business registry documents for Kirby DeLisle |
| C | Canadian business registry documents for Dave Bernard |
| D | Canadian business registry documents for Ashley Ann Airey |
| E | Archived Internet material describing First Nations Lenders' Authority |
| F | Statement from Mohawk Council of Kahnawake |

## **NOTICE OF LIEN AND ASSIGNMENT**

      Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                        */s/ Daniel A. Edelman*
                                        Daniel A. Edelman

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, loan, sale or file associated with Plaintiff, and any loan, account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

T:\42176\Pleading\Complaint DAE 12-22-25_Pleading.wpd